IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                      Case No. 1:23-cr-00944-MLG-2

GARY MERINO-RAMIREZ,

    Defendant.

### ORDER GRANTING THE UNITED STATES' MOTION
### FOR REVOCATION OF RELEASE ORDER

This matter comes before the Court on the United States' Notice of Appeal filed on June 15, 2023[1] (Doc. 13) which seeks review of the Magistrate Judge's order releasing Defendant Gary Merino-Ramirez to the custody of La Pasada Halfway House (LPHH). The United States requests Merino-Ramirez be detained pending trial asserting that he presents a flight risk and a danger to the community. Doc. 16 at 1. Merino-Ramirez opposes the Motion. Doc. 32. Having reviewed the Parties' submissions and the applicable law, and having held a hearing on July 6, 2023, the Court grants the Motion and hereby orders Merino-Ramirez to remain in custody pending trial.

### BACKGROUND

Merino-Ramirez allegedly sold methamphetamine and fentanyl to an undercover law enforcement agent. Doc. 1 at 3-4. The transaction with the undercover agent was apparently recorded. Doc. 16 at 5. Based on that evidence, a warrant to search Merino-Ramirez's motel room

---

[1] Although the government stylized its filing as a "Notice of Appeal," the Court will consider the filing as a "Motion for Revocation of the Release Order" pursuant to 18 U.S.C. § 3145(a)(1).

was issued. *Id.* That search yielded a firearm, $773 dollars of U.S. currency, roughly 74 grams of meth and 478 grams of fentanyl. *Id.* Thereafter, on June 2, 2023, Merino-Ramirez was charged with distribution of five grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i). Doc. 1 at 1.

On June 14, 2023, a detention hearing was held. *See generally* Doc. 15. There, the Magistrate Judge found probable cause that Merino-Ramirez committed the offenses initially charged.[2] *Id.* at 3:12-14. She then heard arguments regarding Pretrial Services' recommendation of detention. The government agreed with that recommendation, emphasizing the seriousness of the charged offenses, the possession of a firearm, and his criminal history which included instances of noncompliance with court orders and probation violations. *Id.* at 3:23-5:19. Merino-Ramirez argued that, based on his history and characteristics, releasing him to LPHH's custody under a set of conditions would alleviate concerns about flight risk and danger to the community. *Id.* at 8:2-7. Specifically, he claimed long-standing ties to the community, struggles with substance use disorder, and a physical disability that significantly impedes his mobility.[3] *Id.* at 6:9-7:17. He also

---

[2] Merino-Ramirez waived his right to a preliminary hearing. Doc. 11.

[3] The pertinent Pretrial Services Report sheds light on Merino-Ramirez's physical condition and familial relationship. That document indicates that Merino-Ramirez was shot in 2017 and sustained an injury resulting in paralysis from the chest down. Doc. 10 at 3. He uses a wheelchair and feels pain on a daily basis but does not take medication. *Id.* While he is physically disabled, he is able to walk slowly on his own. He does not have close ties with his family; is unemployed; has received disability benefits since 2017; is a lifelong resident of Albuquerque; has experienced homelessness; and has a documented history of substance use disorder. Doc. 10 at 1-3. He seems to have completed the Four Winds treatment program in 2017. *Id.* at 3. He also has a history of noncompliance with court orders. *Id.* at 5-13. For example, in 2013, he committed three probation violations for *inter alia* failing to report and for absconding from the Delancey Street Program. *Id.* at 8-9. In 2015, he was charged with failure to appear for a misdemeanor charge. *Id.* at 11. In 2016, a warrant was issued for failure to comply with electronic monitoring. *Id.* at 9-10. That same year, he was charged with escape from a community custody release program. *Id.* at 11. And in June

claimed that, owing to the physical disability, his criminal history since 2017 does not demonstrate the same pattern of noncompliance. *Id.* at 7:7-8:1.

After hearing arguments, the Magistrate Judge entered an oral order releasing Merino-Ramirez into the custody of LPHH under numerous conditions of release including location monitoring.[4] *Id.* at 19:22-21:20. She reasoned that these conditions would mitigate concerns that Merino-Ramirez presents a danger to the community while also providing him with the opportunity to receive assistance for substance use disorder and his disability. *Id.* at 18:18-22; 19:17-20. The Magistrate Judge fashioned her release order based on the charges present at the time of the hearing, which were limited to distribution of five grams and more of methamphetamine and possession of a firearm in furtherance of drug trafficking. At the government's request, the Magistrate Judge stayed the release order until close of business on June 15, 2023, to provide time for the government time to consider an appeal. *Id.* at 18:5-8. The United States timely filed the subject Motion seeking this Court's review of the release order. Doc. 13 at 1. It also sought a stay of the order and requested that Merino-Ramirez remain in custody in the interim. *Id.* This Court granted the stay, ordered Merino-Ramirez to remain in custody, and

---

2017, he violated probation for absconding from the Four Winds treatment program. *Id.* at 10. Due to these factors, Pretrial Services recommended that Merino-Ramirez be detained pending trial. *Id.* at 3-4.

[4] Those conditions included the following: submit to supervision by the supervising officer; avoid either direct or indirect contact with any person who is or may be a victim or witness to the investigation or prosecution; receive medical or psychiatric treatment as directed; must not possess a firearm, destructive device or any other dangerous weapon; must not use alcohol; must not use or unlawfully possess a narcotic drug or any other controlled substance unless prescribed by a licensed medical practitioner; submit to testing for any prohibited substance; must not obstruct or attempt to obstruct or tamper with the efficiency and efficacy of that testing; participate in a program of in-patient or out-patient substance abuse therapy and counseling as directed by the supervising officer; participate in location monitoring; and report any interaction with law enforcement within twenty-four hours to the supervising officer. Doc. 15 at 19:22-21:20.

ordered the Parties to provide briefing on an expedited schedule. Doc. 14. The government filed its brief (Doc. 16), to which Merino-Ramirez responded in opposition. Doc. 32. The Court held a hearing on the Motion on July 6, 2023, heard arguments and took the matter under advisement. Doc. 36.

Four days after appealing the Magistrate Judge's release order, Merino-Ramirez was indicated on several, more serious, charges including two counts of possession with intent to distribute controlled substances; two counts of distribution of 50 grams and more of methamphetamine; distribution of 40 grams and more of fentanyl; distribution of 500 grams and more of fentanyl; and felon in possession of a firearm, among other related counts.[5] Doc. 22 at 2-9. The Court assesses the question of whether to release Merino-Ramirez based on these new allegations and in the context of controlling legal authority.

## OPINION

**I.   Applicable legal standard**

"If a person is ordered released by a Magistrate Judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(a)(1). When reviewing such a motion, the district court acts de novo to make an independent determination of the proper pretrial detention or conditions for release. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (citation omitted). The reviewing court must determine whether there is a condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community. *See* § 3142(e)(1). In making this determination, the Court must consider, based on the available

---

[5] Thus, the Magistrate Judge's decision was made without complete information and founded on a significantly different factual predicate than the one presented to this Court.

information, the factors enumerated in Section 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. If the Court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community, the Court must order the detention of the defendant before trial. § 3142(e)(1).

Where there is probable cause to believe the defendant has violated *inter alia* 18 U.S.C. § 924(c), a rebuttable presumption arises that no condition or combinations of conditions exist to reasonably assure the defendant's appearance or the safety of the community. § 3142(e)(3)(B). "Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). While the burden is "not heavy," "some evidence must be produced." *Id.* at 1355. Even if the defendant meets the burden, the Court may still consider the presumption as a factor in determining whether to release or detain the defendant. *Id.* "However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55.

## II. Analysis

### A. Rebuttable presumption

Merino-Ramirez has not rebutted the presumption in Section 3142(e)(3)(B). The "two factors that [Merino-Ramirez deems] favorable are the length of time that he has resided in the community" and "his lack of mobility." Doc. 15 at 6. However, his disregard for court instructions dwarfs whatever weight these two factors might carry. Merino-Ramirez has failed to appear for court proceedings, violated probation, and absconded from treatment. Doc. 10 at 5-13. Thus, his

ties to New Mexico have not engendered in Merino-Ramirez a respect for the law. As for lack of mobility, the Court is sensitive to the injury Merino-Ramirez sustained and his resulting physical disability. To be sure, the Court's calculus with respect to this matter may be different if Merino-Ramirez were confined to a wheelchair, but those are not the facts presented. Merino-Ramirez is able to ambulate on his own albeit slowly, without the use or need of a wheelchair. Accordingly, Merino-Ramirez's injury does not constitute a sufficient basis, standing alone, to clear the legal hurdle necessary to rebut the presumption of detention required by § 3142(e)(3)(B).

**B.      Flight risk and danger to community**

Even if he had rebutted the presumption, the United States has met its burdens of production and persuasion to show that Merino-Ramirez is a flight risk and/or danger to the community. *See* § 3142(g).

**i.      Nature and circumstances of the offense**

The Court considers the nature and circumstances of the offense including whether it was a crime of violence. *See* § 3142(g)(1). Merino-Ramirez was charged with numerous drug-related and firearm-related felony offenses. The nature and circumstances of these crimes, while not necessarily violent in nature, are quite serious. *Compare United States v. Ingle*, 454 F.3d 1082, 1083 (10th Cir. 2006) (holding that being a felon in possession of a firearm is not a crime of violence under 18 U.S.C. § 3156(a)(4)(B))*, with* 18 U.S.C. § 3156(a)(4)(B) (defining "crime of violence" as "an offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). These charges include two counts of possession with intent to distribute controlled substances; two counts of distribution of 50 grams and more of methamphetamine; distribution of 40 grams and more of fentanyl; distribution of 500 grams and more of fentanyl; and felon in

possession of a firearm, among other related counts. Doc. 22 at 2-9. All of these offenses carry stiff penalties. For example, conspiracy to distribute 50 grams and more of methamphetamine carries a ten-year statutory minimum term of imprisonment. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). The number and serious nature of the drug-related offenses Merino-Ramirez is facing, weigh in favor of detention.

ii.     **Weight of the evidence against the defendant**

The weight of the government's evidence against Merino-Ramirez is extremely strong. *See* § 3142(g)(2). As noted earlier, his transaction with the undercover agent was recorded and evidence seized from the motel room includes a firearm, $773 dollars, 74 grams of meth and 478 grams of fentanyl. Doc. 16 at 5.

iii.    **History and characteristics of the defendant**

As stated earlier, Merino-Ramirez is physically disabled but can walk slowly on his own accord. He does not have close ties with his family; is unemployed; and has received disability benefits since 2017. Although he is a lifelong resident of Albuquerque, Merino-Ramirez has experienced homelessness. Further, Merino-Ramirez has a documented history of substance use disorder. In addition, Merino-Ramirez's record includes numerous instances of failing to appear, violating probation and absconding from treatment centers.

iv.     **Nature and seriousness of the danger to the community**

Finally, the Court addresses the nature and seriousness of the danger to the community that Merino-Ramirez's release would entail. *See* § 3142(g)(4). The Pretrial Services Report indicates that Merino-Ramirez has a history of violent offenses including assault and battery upon school personnel; kidnapping with intent to cause great bodily, death, or sexual offense; and battery and aggravated assault against a household member. Doc. 10 at 5-12. Moreover, the "concern about

safety is to be given a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). For example, the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community. *See id.* While Merino-Ramirez's criminal history does not display a pattern of drug trafficking, he has been charged previously with a number of drug-related offenses. Doc. 10 at 6-13.

## CONCLUSION

As the preceding suggests, Merino-Ramirez has failed to rebut the presumption in Section 3142(e)(3)(B). Even if he had rebutted the presumption, the government has met its burden to show that he is a flight risk and/or danger to the community. Either way, because no condition or combination of conditions exist to reasonably assure his appearance or the safety of the community, the Court must order that Merino-Ramirez be detained pending trial. *See* § 3142(e)(1). The Court therefore grants the Motion. Doc. 13. It is hereby ordered that Merino-Ramirez remain in custody pending trial.

MATTHEW L. GARCIA
UNITED STATES DISTRICT JUDGE